UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS DIVISION
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MOISES REYNA-LEYVA, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO: |
| | § | (JURY TRIAL DEMANDED) |
| MARCO PESQUERA, NORMA | § | |
| LINDA PEREZ, SAUL ATKINSON | § | |
| PANGEA U.S. CAPITAL | § | |
| CORPORATION, DATA | § | |
| PROCESSING SPECIALISTS, INC., | § | |
| ELITE TOP INTERNATIONAL | § | |
| COMPANY, and MOHAWK | § | |
| CONSTRUCTION, LLC, | § | |
| Defendants. | § | |

ORIGINAL COMPLAINT

I.

PRELIMINARY STATEMENT

1.1     This is an action for damages and declaratory relief brought by a Mexican citizen

who was solicited, recruited, and hired in Mexico for employment in the United States by means

of false pretenses, representations, or promises; and whose admission into the United States was

procured through fraud in the H-2B Visa guest worker program.

1.2.     Plaintiff's claims stem from Defendants' employment practices during 2014.

Plaintiff asserts claims pursuant to the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 et seq.  In addition, Plaintiff brings claims for breach of contract,

and fraud.

II.

## JURISDICTION

2.1     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§ 1331 (federal question); 28 U.S.C. § 1337 (interstate commerce); 8 U.S.C. § 1329 (INA); and

§ 18 U.S.C. § 1964 (RICO).

2.2     The Court also has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claim that they form

part of the same case or controversy.

2.3     Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

III.

## VENUE

3.1     Venue is proper in the Corpus Christi Division of the Southern District of Texas

pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 (RICO).

IV.

## PARTIES

4.1     Plaintiff is a citizen of Mexico, who at all times relevant to this action, was

admitted to the United States as a temporary guest worker using an H-2B Visa pursuant to 8

U.S.C. § 1101(a)(15)(H)(ii)(B).

4.2     Defendant Marco Pesquera is a natural person who resides in Texas.  Defendant is

also an "employer" who has "job opportunities" to whom United States and H-2B workers can be

referred.  He may be served with process at 624 N. EXP. STE.11, Brownsville, Texas 78521.

4.3     Norma Linda Perez is a natural person who resides in Texas.  Defendant acted

jointly with Marco Pesquera and Saul Atkinson to submit fraudulent H-2B Applications for

Temporary Employment Certification to the U.S. Department of Labor.  She may be served with process at 2390 Central Blvd., Ste. W, Brownsville, Texas 78520.

4.4     Saul Atkinson is a natural person who resides in Denver, Colorado.  Defendant is an "employer" who has "job opportunities" to whom United States and H-2B workers can be referred.  He may be served with process at 1001 16th ST. STE., B-180-60, Denver, Colorado, 80265.

4.5     Pangea U.S. Capital Corporation is a Texas Corporation.  It may be served with process by serving its registered agent, Marco Pesquera at 1425 E. Ruben Torres, Suite N, Brownsville, Texas 78521.

4.6     Data Processing Specialist, Inc. is a Texas Corporation.  It acted jointly with Defendants Marco Pesquera and Saul Atkinson to process H-2B Applications for Temporary Employment Certification.  It may be served with process by serving registered agent Norma Vega at 2390 Central Blvd., Ste. W. Brownsville, Texas 78520.

4.7     Elite Top International Company is a Texas Corporation.  Defendant is an "employer" who has "job opportunities" to whom United States and H-2B workers can be referred.  It may be served with process by serving its registered agent, Marco Pesquera, at 624 N. Exp. Ste. ll, Brownsville, Texas 78521.

4.8     Mohawk Construction, LLC, is a Colorado limited liability company.  Defendant is an "employer" who has "job opportunities" to whom United States and H-2B workers may be referred.  It may be served with process by serving member Saul Atkinson at 1001 16th ST., Ste. B-180-60, Denver Colorado 80265.

3

V.

## FACTUAL ALLEGATIONS

5.1     Defendant Marco Pesquera is President, Director, Member, and/or Registered Agent of Pangea U.S. Capital Corporation, Elilacon Company, Inc., Gallo Group, Inc., and Elite Top International Company a/k/a Elite International Co.

5.2     Defendants Marco Pesquera and Norma Linda Perez are affiliated with Data Processing Specialists, Inc.

5.3     Pangea U.S. Capital Corporation is a racketeering enterprise who with its members and associates is dedicated to the pursuit of organized criminal conduct, principally visa fraud and fraud in foreign labor contracting, racketeering activity indictable under 18 U.S.C. §§1546 and 1351, respectively.

5.4     Defendants Marco Pesquera, Norma Linda Perez, Saul Atkinson, Data Processing Specialists, Inc., Elite Top International Company and Mohawk Construction, LLC, at various times relevant to this complaint associated with Pangea U.S. Capital Corporation.

5.5     Pangea U.S. Capital Corporation, and its employees, members and associates submit H-2B Applications for Temporary Employment Certification to the United States Department of Labor and fraudulently declare they are applying for H-2B Visas to bring in guest workers for specific employers in a specific area of intended employment, knowing the H-2B Visas will be used to supply foreign guest workers to employers not listed in the H-2B Application in occupations outside the area of intended employment. An H-2B Visa is only valid to permit the alien beneficiary/H-2B worker to enter and work for the petitioning employer only, in the specific position described in the H-2B Application for Temporary Employment Certification.

4

5.6     Pangea U.S. Capital Corporation and its employees, members, and associates then use materially false or fraudulent pretenses, representations or promises to solicit, recruit and hire foreign guest workers outside the United States for purposes of employment in the United States.

5.7     Pangea U.S. Capital Corporation then uses the fraudulently obtained H-2B visas to bring the foreign guest workers into the United States.  The workers are then warehoused in substandard hotels until placed with an employer.  Pangea U.S. Capital Corporation, its employees, members and associates make money by retaining part of the wages earned by each guest worker they succeed in placing.

5.8     Plaintiff, starting in 2012, worked as a welder for Oceanografia, a company which contracts with the Mexican National Oil Company, PEMEX.  He sometimes earned up to around $33,000 Mexican Pesos a month, that is, approximately U.S. $2,500.00 (Dollars).  He performed welding work on offshore boats or marine platforms with Oceanografia.

5.9     In late December 2013 or early January 2014, a friend of Plaintiff's called and told him about Pangea, a company that had gotten him an H-2B Visa to work in Jennings, Louisiana.  Due to debts that needed to be paid, Plaintiff was interested in a better paying job, and requested Pangea's contact information.

5.10    Plaintiff called the Pangea office in Brownsville, Texas, and inquired about welding jobs.  Pangea requested that Plaintiff fax copies of his credentials from prior jobs, his passport, and prior visas.  Plaintiff complied.  Around a week later Pangea called and told Plaintiff he needed to take a welding test in Veracruz, Mexico on January 23, 2014.

5.11    Plaintiff was planning to return to another offshore boat or platform with Oceanografia on January 15, 2014, but instead decided to do the welding test with Pangea.

5

Plaintiff paid around $1000 pesos for a roundtrip bus ticket from Tuxtla Gutierrez, Chiapas to
Veracruz, Mexico. He met a Pangea representative named Emilio in Veracruz. There were
about 70 workers taking the test with Plaintiff. Plaintiff passed the test, and was told to contact
the Pangea office in Brownsville again. Emilio told him to be ready to go to the United States in
February. That Pangea would get back in touch with Plaintiff about the specifics of when the H-
2B Visas would be processed.

   5.12 Pangea did not contact Plaintiff in February 2014.

   5.13 Defendant Norma Linda Perez of Data Processing Specialist, Inc., and Defendant
Marco Pesquera of Elite Top International Company a/k/a Elite International Company
submitted an H-2B Application for Temporary Employment Certification to the United States
Department of Labor seeking 37 sheet metal roofers; for a period of employment beginning on
April 21, 2014, and ending December 31, 2014; promising 40 hours of work per week with a
work schedule of 7:00 a.m. to 4:00 p.m.; with pay of $12.30 per hour. The work would be
performed at multiple worksites in Cameron County; and transportation would be provided from
a central location to and from each worksite. The Texas Workforce Commission recruited
United States workers for the forgoing job opportunities using job order number 3212540 which
was active from January 9-19, 2014. The job opportunities were also advertised in the
Brownsville Herald from January 18-19, 2014. On April 21, 2014, William L. Carlson of the
U.S. Department of Labor, Office of Foreign Labor Certification, certified the H-2B Application
as valid from April 21 to December 31, 2014. These job terms formed a binding contract
between the employer and workers recruited to fill the H-2B visa job opportunities.

   5.14 Defendant Marco Pesquera in his capacity as President of Elite Top International
Company a/k/a Elite International Company declared under penalty of perjury that he read and

reviewed the H-2B Application for Temporary Employment Certification and that to the best of his knowledge the information contained therein is true and accurate. Defendants Marco Pesquera, Elite Top International Company a/k/a Elite International Company, Norma Linda Perez, and Data Processing Specialist, Inc., knew this declaration to be false. It was done to procure H-2B Visas for foreign guest workers to be placed by Pangea U.S. Capital Corporation outside the area of intended employment listed in the H-2B Application, to meet the needs of employers not listed on the H-2B Application to whom Pangea supplied labor. This constitutes visa fraud indictable pursuant to 18 U.S.C. § 1546. Defendant Marco Pesquera made a similar declaration on other H-2B Applications for Temporary Employment Certification submitted by Elite International Company in 2014, and other companies with whom he is affiliated.

    5.15    In July 2014 a woman named Yazmin employed by Pangea called Plaintiff's home and said an H-2B Visa was available for him. She said he would work in Jennings, Louisiana earning $18 per hour, and there would be many hours of work. The Pangea representative also said he would get visa extensions once in the United States. The Pangea representative also instructed Plaintiff to bring $250 U.S. Dollars to pay for the right to the H-2B Visa. At all times, Yazmin was acting within the scope of her employment with Pangea.

    5.16    Plaintiff and his wife borrowed money from a local store that also acts as a bank for the trip to Monterrey and to the United States. Plaintiff paid his own fare for the 24 hour bus trip to Monterrey from Tuxtla Gutierrez, Chiapas. Once in Monterrey, Nuevo Leon, Plaintiff and a group of other workers met with several men who were agents of Pangea and a Mexican Visa agent named Oscar Zamora at the Royalty Hotel. The Pangea Representatives told the workers that at the American consular interview they had to say they were going to work for Elite Top International, and not to mention Pangea. That if they did not follow instructions they would be

7

sorry, because failure to do so would affect other workers and their families and the other workers would "beat the shit out of them."

5.17    After an interview, the consular officer told Plaintiff and other workers the visas would be approved.  However, when Plaintiff returned to pick up his H-2B Visa, the Pangea representative told him and other workers, that they had to go back to the American consulate office.  When Plaintiff went back to the consular office, the consular officer talked to some of the workers in groups.  At the end of the interviews, the consular officer told the workers he was sorry, but that the H-2B Visas would be cancelled because they had found problems with the company they were going to work with.  The Consular Officer also said they were free to apply for another H-2B Visa with a different company.  The Consular Officer stamped the H-2B Visa which had the name of employer, Elite Top International Co., "cancelled without prejudice".

5.18    On information and belief, Plaintiff's H-2B Visa was cancelled because the U.S. Consulate Office detected visa fraud indicators.

5.19    Plaintiff and other workers then returned to the Royalty Hotel.  Oscar Zamora called in and assured the workers Pangea would get them another visa.  The workers were not reimbursed their visa and travel costs.  Plaintiff had to call his family to obtain money for the return trip home.

5.20    Defendant Norma Linda Perez of Data Processing Specialist, Inc., Marco Pesquera of Pangea U.S. Capital Corporation, and Saul Atkinson of Mohawk Construction, LLC, submitted an H-2B Application for Temporary Employment Certification to the United States Department of Labor on April 14, 2014, seeking 43 layout workers to layout reference points on metal, fit, and align fabricated parts; for a period of employment beginning on May 6, 2014, and ending on December 31, 2014; promising 40 hours of work per week, with a work schedule of

7:00 a.m. to 4:00 p.m.; at a wage of $14.43 per hour.  The work would be performed at multiple worksites in Denver, Colorado,  and transportation would be provided from a central location to and from each worksite.  These job terms formed a binding contract between the employer and workers recruited and hired to fill the H-2B visa job opportunities.

5.21    The Colorado Workforce Center recruited United States workers for Mohawk Construction, LLC's, job opportunities using job order number 5777066, which was active from March 13, 2014, to March 24, 2014.  The job opportunities were also advertised in The Gazette of Denver, Colorado on March 23, and 24, 2014.

5.22    The H-2B Application was certified by William L. Carlson of the U.S. Department of Labor, Office of Foreign Labor Certification, for the period of May 6, 2014 to December 31, 2014, on May 6, 2014.

5.23    Saul Atkinson of Mohawk Construction, LLC,  declared under penalty of perjury that he read and reviewed the H-2B Application for Temporary Employment Certification and that to the best of his knowledge the information contained therein is true and accurate. Defendants Marco Pesquera, Pangea U.S. Capital Corporation, Norma Linda Perez, Data Processing Specialist, Inc., Saul Atkinson, and Mohawk Construction, LLC, knew this declaration to be false.  It was done to procure H-2B Visas for foreign guest workers to be placed by Pangea U.S. Capital Corporation outside the area of intended employment listed in the H-2B Application, to meet the needs of employers not listed on the H-2B Application to whom Pangea was supplying labor. Defendant Saul Atkinson made a similar declaration in another H-2B Application submitted in 2014.

5.24    Plaintiff returned to work at Oceanografia, and was off-shore, on a marine platform in September 2014, when Yazmin of Pangea called.  She inquired if Plaintiff was

available for work in the State of Virginia. She said Plaintiff would get paid $18-$20 an hour and that workers at the Virginia Company were getting 10-12 hours of work per day, or around 80 hours per week. Plaintiff needed to go to the American consulate in Monterrey for another interview, and bring enough money to last around 2 weeks. This was because there would be about a week of travel, and he wouldn't get paid until the end of the first week of work. The Pangea representative again stated they would get 4-6 months of visa extensions. At all times, Yazmin was acting within the scope of her employment with Pangea.

5.25    Plaintiff again paid his own way to the American Consulate in Monterrey, including food and hotel expenses. He stayed at a different hotel, but met with agents of Pangea and Oscar Zamora at the Hotel Royalty again. This time he was told to say he would be working for a company called Mohawk Construction. The workers were interviewed in groups at the consulate, and were granted H-2B Visas to work for the petitioning employer Mohawk Construction, LLC.

5.26    Afterwards Plaintiff paid Pangea's associates around $900 Mexican pesos for bus fare from Monterrey to Brownsville, Texas. Plaintiff crossed into Brownsville, Texas, on Friday, September 19, 2014, the day after receiving his H-2B Visa. Once in the United States, Plaintiff and the other workers called the Pangea offices in Brownsville. A woman named Edna, an employee of Pangea, came and took the workers to the Pangea Office.

5.27    Edna took the workers into a small room, and provided each a Pangea business card. She confirmed the work information provided by Yazmin. She said that the work would be in Virginia, and that they needed money for two weeks because it would be that long before they got paid due to travel and not getting paid until the end of the first week of work. Edna said that Pangea would first move them to Houston for some sort of safety talk, and from there they

10

would travel to Virginia and be working in a few days. Edna also explained how Pangea works. She explained they did not work for the individual companies, but instead for Pangea, and that Pangea provides the workers services to the companies. Because of that, Pangea was going to receive part of the wages paid by the companies because Pangea had provided the workers. That day Pangea helped Plaintiff and the other workers open a bank account at Wells Fargo Bank, where Pangea would deposit their paychecks. Pangea gave each worker a $75 loan to open the account, which would later be deducted from their pay. Defendants at all times knew Plaintiff would not be working for Mohawk Construction, LLC, as had been represented to the Government under penalty of perjury in order to procure the H-2B Visas.

5.28    During the meeting Edna explained that Pangea paid a lot of money to get the workers H-2B Visas and that therefore it was not fair for workers to get their visas and leave. She said that if workers left, Pangea would report them to the police and immigration and immediately cancel their visas. She said that the workers would get punishment of between 5 and 10 years if they tried to come back. Plaintiff perceived this as a threat, but he had no intention of leaving at that time, as he thought he had a good welding job in Virginia. At all times, Edna was acting within the scope of her employment with Pangea.

5.29    Plaintiff spent the first night in Brownsville in a Motel 6. The next day, Pangea transported Plaintiff and other workers by Greyhound bus to the Pelican Inn in Aransas Pass, Texas.

5.30    Plaintiff was placed in a room with three men he didn't know. Two men slept in each double bed. The hotel was worn down and not maintained. There were cockroaches and mice everywhere. The air conditioning did not cool properly. The hotel was full of workers brought into the United States by Pangea.

11

5.31    There were Pangea coordinators in charge of the workers at the hotel. The
Pangea coordinators were named Jose Luis Silva and Alejandro Torres. Each day, the Pangea
coordinators would go around the hotel rooms several times, knocking on doors and taking roll
call. They checked to make sure workers were still there and had not left. The Pangea
coordinators warned Plaintiff that if an offer of work came through and he happened to be gone
from the hotel, he would miss out on the offer. Each day Plaintiff and the other workers would
ask the Pangea coordinators if they were going to start working, but each day they were told
there still wasn't anything for them. At all times, Jose Luis Silva and Alejandro Torres were
acting within the scope of their employment with Pangea.

5.32    During his first week at the Pelican Inn, Pangea sent Plaintiff for a medical exam
at a hospital in Aransas Pass. After that Plaintiff was left at the hotel, hoping and praying to get
word about when he would start working. Other workers at the hotel told Plaintiff that other
workers who stayed at the hotel didn't get any work for weeks. The conflicting reports
regarding the work situation made Plaintiff extremely anxious.

5.33    After nine days Plaintiff, and the other workers who shared the hotel room with
Plaintiff started to worry. They had been told to bring enough money to get through two weeks,
and the money was running out. They called the Pangea representatives asking when they would
be assigned to work and asking for financial assistance. They were referred to another Pangea
representative named Isai Espinoza, who referred them to another Pangea representative named
Justin Call. Justin wouldn't answer his phone. Isai also told them they needed to go to Houston
the following week for an OSHA training, and then things would get worked out.

12

5.34    Another week passed, and nothing happened.  Plaintiff and the other workers were not taken to Houston for the OSHA training, nor were they assigned work.  Plaintiff by now was short on cash, anxious, and was limiting his food intake as a result.

5.35    By October 6, 2014, Plaintiff was desperate.  He only had a few dollars left.  The other workers had no money left.  They called Justin of Pangea and explained how desperate things had become for them and their families.  It was depressing to be sitting around the hotel feeling useless.  Justin said he would get them a loan  and get them placed in a job that week.  Plaintiff now started to ruminate about his situation  and wondered what would become of his family without his anticipated income.

5.36    Pangea then sent Plaintiff and four other workers to the Houston area for a welding test.  The welding test was given in Texas City.  The material provided during the welding test was not adequate for the type of weld requested.  While doing the welding test Plaintiff stayed at a hotel in Galveston.  There were about 50 men brought to the U.S. by Pangea who no longer had work at the hotel.  They had been waiting 2 to 3 weeks for an assignment, and Pangea couldn't provide these workers any more loans.  Plaintiff also heard the workers brought to the U.S. by Pangea in Houston and Louisiana didn't have work either.  These reports made Plaintiff more anxious, depressed, and despondent.

5.37    Plaintiff and the other workers who had taken the welding test were taken back to Aransas Pass by Pangea.  No one at Pangea could tell Plaintiff anything, except that he would have work soon.

5.38    By the middle of October it had been over twenty days since Plaintiff arrived in the United States, and Plaintiff had not earned a penny yet.  Instead Plaintiff and his family had taken on even more debt. Plaintiff no longer had enough money to eat three meals a day.

13

Plaintiff had to hope that other workers at the hotel would share their food with him. Plaintiff felt trapped at the hotel, and became extremely depressed. Plaintiff started to lose weight. Plaintiff had bags develop under his eyes from the stress. Plaintiff kept waking up in the middle of the night worrying about what was going to happen next. All the ruminating over his situation and that of his family kept him awake at night.

5.39    By now Plaintiff felt like Pangea held him hostage at the hotel. He couldn't leave because he had no money to return to his home country and his debt back home had increased. If he was not in the hotel room when Pangea called, they would call Plaintiff's wife in Mexico to locate him. This alarmed Plaintiff's wife, and made clear to Plaintiff how closely Pangea monitored his movements.

5.40    After being at Aransas Pass for almost 30 days without work, Plaintiff was out of money and out of food. The situation had become extremely bleak, difficult and desperate for Plaintiff.

5.41    A few days later Melissa from Pangea visited the hotel. Plaintiff and another worker asked if the company was going to give them work or if they could go back to Mexico. She explained there was no more work in Virginia or Houston, but they would try the Corpus Christi or Port Aransas area.

5.42    Pangea then moved Plaintiff and 23 other workers to the Hotel Tropic. Plaintiff and other workers had to move Pangea's property and equipment into storage before the move. This hotel was also in bad condition. There were bugs and the screens were broken. Plaintiff called Edna in the Brownsville Office, and all she said was maybe next week they would give him the OSHA training. Plaintiff called Emilio the Pangea representative who supervised the welding test in Mexico, and he just said he would look into the problem. Justin said they would

14

get the workers visa extensions and get everything figured out. Nothing he was told relieved the extreme stress, depression, and rumination.

5.43    Finally, around the end of October after almost 40 days without receiving the work they were promised, some men who did not work for Pangea came to the hotel. They asked us if any of the workers wanted to go. Although Plaintiff was still afraid of what would happen if Pangea reported him to the law enforcement, his desperation to take care of his family, pay off his debts, and to be able to eat, drove him to leave with the men. Also, by now Plaintiff had heard so many lies from Pangea, that he had finally stopped believing them. Plaintiff decided to escape with these men.

5.44    It had become clear to Plaintiff that Pangea and its associates had knowingly and with intent to defraud him recruited and hired him in Mexico to perform work in the United States by means of materially false or fraudulent pretenses, representations, or promises regarding that employment. This constitutes fraud in foreign labor contracting and is indictable pursuant to 18 U.S.C. §1351. See, Paragraphs 5.15 and 5.24.

5.45    Defendant Norma Linda Perez of Data Processing Specialist, Inc., Marco Pesquera of Pangea U.S. Capital Corporation, and Saul Atkinson of Mohawk Construction, LLC, submitted an H-2B Application to the United States Department of Labor on April 14, 2014, seeking 61 Layer Helpers to help perform duties which included measuring, cutting, and assembling; using, supplying, and holding materials or tools; as well as cleaning work area, and equipment. The 61 Layer Helpers were needed for a period of employment beginning on March 1, 2014 and ending on December 31, 2014. The application promised 40 hours per week, with a work schedule of 7 a.m. to 4 p.m. at a wage rate of $14.26 per hour. The work would be performed at multiple worksites within Denver, Colorado, and transportation would be provided

15

from a central location to and from each worksite. These job terms formed a binding contract between Mohawk Construction, LLC and workers recruited and hired to fill the H-2B Visa job opportunities.

5.46    The Colorado Workforce Center recruited United States Workers for Mohawk Construction, LLC's job opportunities using job order number 5777108 from March 13, 2014, to March 24, 2014. These job opportunities were also advertised in The Gazette of Denver, Colorado on March 23 and 24, 2014.

5.47    Saul Atkinson of Mohawk Construction, LLC, declared under penalty of perjury that he read and reviewed the H-2B Application for Temporary Employment Certification seeking 61 Layer Helpers and that to the best of his knowledge the information contained therein was true and accurate. Defendants Marco Pesquera, Pangea U.S. Capital Corporation, Norma Linda Perez, Data Processing Specialist, Inc., Saul Atkinson, and Mohawk Construction, LLC, knew this declaration to be false. It was done to procure H-2B Visas for foreign guest workers to be placed by Pangea U.S. Capital Corporation and its associates outside the area of intended employment listed in the H-2B Application, to meet the needs of employers not listed on the H-2B Application to whom Pangea was supplying labor.

5.48    The application of Mohawk Construction, LLC, seeking temporary labor certification under the H-2B Visa program was denied on May 9, 2014, by the H-2B Certifying Officer with the U.S. Department of Labor, Employment and Training Administration, Office of Foreign Labor Certification, Chicago National Processing Center. The Application was denied because Mohawk Construction, LLC, failed to (1) establish that the nature of the employer's labor need is temporary and (2) to provide adequate documentation to establish temporary need for the number of workers requested. To support temporary need the employer provided "a

16

single document called, Master Service Agreement, [which] purported to be a contract to provide construction services to Zimmer Cox Commercial Builders.  This document only demonstrates a single contract and does not, by itself, support a temporary need when Mohawk Construction is in the business of entering into contracts for construction services on a year round basis.  Further, the bona fides of this document is questionable.  [The H-2B Certifying Officer explained] [a]ccording to Nick Zimmer, President of Zimmer Cox Commercial Builders, his company has not entered into any commercial agreements with Mohawk Construction, nor has he ever heard of a company called Mohawk Construction.  Further, Mr. Zimmer indicated that, while the Master Service Agreement provided by Mohawk Construction is signed by Max Mathews, Vice President, there is no such person or position at Zimmer Cox."

VI.

## CLAIMS FOR RELIEF

### FIRST CLAIM - - RICO

6.1     Plaintiff realleges and incorporates by reference paragraphs 1.1 to 5.48 of this Complaint.

6.2     Defendants Marco Pesquera, Norma Linda Perez, Saul Atkinson, Pangea U.S. Capital Corporation, Data Processing Specialist, Inc., Elite Top International Company, and Mohawk Construction, LLC, are "persons" as defined by RICO, 18 U.S.C. §1961 (3).

6.3     Defendant Pangea U.S. Capital Corporation is an "enterprise" as defined by RICO, 18 U.S.C. §1961 (4).  Defendants Marco Pesquera, Norma Linda Perez, Saul Atkinson, Data Processing Specialist, Inc., Elite Top International Company, and Mohawk Construction, LLC were associates of Pangea U.S. Capital Corporation.

17

6.4     Defendants Marco Pesquera, Norma Linda Perez, Saul Atkinson, Pangea U.S. Capital Corporation, Data Processing Specialist, Inc., Elite Top International Company, and Mohawk Construction, LLC, conducted or participated or conspired to conduct or participate in the conduct of the enterprises' affairs, affecting interstate or foreign commerce, through a pattern of racketeering activity, consisting of multiple acts indictable under 18 U.S.C. §1546 (Visa fraud)  and 18 U.S.C. §1351 (fraud in foreign labor contracting) contrary to 18 U.S.C. §1962 (c) and (d).

6.5     As a direct, intended and foreseeable result of Defendants' violation of RICO, Plaintiff has suffered an identifiable and distinct injury to his business or property interests in the form of lost employment opportunities, wages, and other damages.

6.6     As a result of Defendants' violation of RICO, Plaintiff suffered injury and is entitled to recover threefold the damages be sustained, the costs of suit, including a reasonable attorney's fee.  18 U.S.C. §1964 (c).

SECOND CLAIM - - CONTRACT

6.7     Plaintiff realleges and incorporates by reference paragraphs 1.1 to 5.48 of this Complaint.

6.8     Pangea U.S. Capital Corporation, Elite Top International Company, and Mohawk Construction, LLC, each offered employment and Plaintiff accepted employment on specific terms and conditions.

6.9     Defendant Pangea U.S. Capital Corporation, Elite Top International Company, and Mohawk Construction, LLC, entered into employment contracts with Plaintiff.  Plaintiff was fully prepared to perform his obligations under the respective contracts.

18

6.10    Defendant Pangea U.S. Capital Corporation, Elite Top International Company, and Mohawk Construction, LLC, unlawfully breached the contracts of employment entered into by the parties by failing to comply with the promised terms and conditions of employment.

6.11    As a direct consequence of Defendants' breach of the employment contracts, Plaintiff suffered economic and financial loss.

6.12    Defendants are liable to Plaintiff for his actual, incidental, and consequential damages, and for costs and attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§38.001 et seq.

THIRD CLAIM - - FRAUD

6.13    Plaintiff realleges and incorporates by reference paragraph 1.1 to 5.48 of this complaint.

6.14    Defendants Marco Pesquera and Pangea U.S. Capital Corporation through its employees, who at all times acted within the scope of their employment, made representations to the Plaintiff regarding terms and conditions of employment, directly and/or indirectly.

6.15    The representation regarding terms and conditions of employment was material to Plaintiff.

6.16    The representation made by Defendants Marco Pesquera and Pangea U.S Capital Corporation through their employees, who at all times acted within the scope of their employment, was false.

6.17    When the representations were made, Defendants Marco Pesquera and Pangea U.S. Capital Corporation knew the representations were false, or made the representations recklessly, as a positive assertion, and without knowledge of its truth.

19

6.18    The Defendants Marco Pesquera and Pangea U.S. Capital Corporation, acting through their employees, made the representations with the intent that Plaintiff act on the representations.

6.19    Plaintiff relied on the representations.

6.20    The representations caused Plaintiff injury.  Plaintiff is entitled to recover his actual damages, mental anguish damages, exemplary damages, prejudgment and post judgment interest, and his reasonable court costs.

VII.

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

7.1    Cite the Defendants to appear and answer herein;

7.2    Declare that Defendant's violated the rights of Plaintiff under RICO, breached their contracts of employment with Plaintiff, and defrauded Plaintiff as alleged above;

7.3    Award Plaintiff threefold his damages for violations of his rights under RICO;

7.4    Award Plaintiff his actual, incidental, and consequential damages resulting from Defendants' breach of their respective contract;

7.5    Award Plaintiff his actual damages, mental anguish damages, and exemplary damages for fraud;

7.6    Award Plaintiff his reasonable attorneys' fees and court costs;

7.7    Award Plaintiff prejudgment and post-judgment interests; and

7.8    Award Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted,

20

Javier Riojas
Attorney-in-Charge
Texas Bar No. 16935830
SD Tex. I.D. No. 5162
Texas RioGrande Legal Aid, Inc.
542 E. Main Street
PO Box 2001
Eagle Pass, Texas 78853
Tel. (830) 752-6400
Fax (830) 773-5806


William Grigg    with permission /cR/
William Grigg
Texas Bar No. 24097769
Texas RioGrande Legal Aid, Inc.
1702 Convent Ave.
Laredo, Texas 78040
Tel. (956) 718-4600
Fax (956) 727-8371


ATTORNEYS FOR PLAINTIFF